1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOBILOC, LLC,

                          Plaintiff,

        v.

NEUTRON HOLDINGS, INC. DBA LIME,

                          Defendant.

No.  2:20-CV-1570-BJR

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT AND ON
MOTIONS TO SEAL

This matter is before the Court on Defendant's Motion for Summary Judgment of Non-Infringement.  Dkt. No. 38.  The parties have also filed two motions to seal materials submitted in connection with the summary judgment motion.  Dkt. Nos. 36 and 45.

Having reviewed the materials submitted in support of and in opposition to this motion, and having heard oral argument from the parties, the Court GRANTS Defendant's Motion for Summary Judgment.  The Court also GRANTS the motions to seal.  The reasons for the Court's decision are set forth below.

## I.        Background

Plaintiff Mobiloc, LLC filed this patent infringement action on October 23, 2020, against Defendant Neutron Holdings Inc., which is doing business as "Lime."  Plaintiff owns U.S. Patent No. 8,854,207 ("the '207 patent"), which is entitled "Mobile Lock with Retractable Cable."  Dkt. No. 9.  The '207 patent discloses a mobile lock that contains a cable that retracts from the "body

ORDER - 1

component" of the lock.  The mobile lock includes an "attachment component" to attach the lock to the bicycle.

Of primary importance for the purposes of this motion, the mobile lock disclosed in the '207 patent also includes "a location component <u>inside</u> the body component" of the mobile lock. *Id.*, Claim 1 (emphasis added).  The "location component" includes a Global Positioning System (GPS) location chip set.  *Id.*  The abstract for the '207 patent indicates that this "integral wireless locator system . . . can precisely locate the mobile device in real-time if stolen."  *Id.*, Abstract.

Defendant operates fleets of electric bicycles ("e-bikes") that are available for rent to customers through a mobile phone application.  Plaintiff's complaint alleges that Defendant's "Model 5.5 JUMP e-bike" infringes the '207 patent.

Defendant's e-bike has a lock with a retractable cable; however, the lock does not have a GPS chip inside of it.  Instead, the accused e-bike has a GPS chip in an electronics module on the handlebars of the bike.  The electronics module of the accused e-bike "is connected by a wire to the components 'inside the body component' of the mobile lock."  Dkt. No. 43 at 3.

Defendant denies that the accused e-bike infringes the '207 patent, asserting that its e-bikes "do not include the claimed 'mobile lock' with 'a location component inside the body component' as required by every claim of the '207 patent."  Dkt. No. 34 at 5.[1]

On March 2, 2021, the parties filed a stipulation which indicated that they "have identified an issue that may be case dispositive, and agree that it would streamline matters in this case to have the Court's determination of this issue before time consuming and expensive claim construction proceedings and further exchange of discovery."  Dkt. No. 37 at 1-2.  The parties

---

[1] Defendant has also filed counterclaims seeking a declaratory judgment that the accused e-bike does not infringe the '207 patent, as well as a declaratory judgment that the '207 patent is invalid.

ORDER - 2

indicated that Defendant planned to file a motion for summary judgment asserting that its accused e-bikes do not infringe any claim of the '207 patent because all claims require "a location component inside [a] body component" of a lock, and the accused e-bike does not have a location component "inside" a body component of its lock.  *Id.* at 2.  In this stipulation, Plaintiff acknowledged that the "location component" of the accused e-bike is not located inside the "body component" of a lock; however, Plaintiff asserted that Defendant's e-bike infringed the '207 patent under the doctrine of equivalents.  *Id.*  The parties stated that they "agree that the Court may determine this disputed infringement and Doctrine of Equivalents issue without interpretation of any disputed claim terms in the asserted patent."  *Id.*  They also indicated that "the discovery and contentions exchanged thus far are more than likely sufficient for the parties to brief this disputed issue and for the Court to decide this issue."  *Id.*

In light of this stipulation, the Court granted the parties' request to stay discovery and claim construction briefing pending a ruling on Defendant's motion for summary judgment.

## II.        Discussion

### A.        Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B.        Claim Vitiation and the Doctrine of Equivalents

Defendant's motion for summary judgment of non-infringement focuses on fact that its accused e-bike does not have a "location component" (i.e., a GPS chip) that is <u>inside</u> the "body component" of its lock.  Plaintiff acknowledges that the location component on the accused

ORDER - 3

device is not inside the lock, and as a result the accused device does not literally infringe the '207 patent.  However, Plaintiff maintains that the accused device nonetheless infringes the '207 patent under the doctrine of equivalents.

Under the doctrine of equivalents, a product that "does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product . . . and the claimed elements of the patented invention."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  Equivalence may be demonstrated under either: (1) the "insubstantial differences" test; or (2) the "function-way-result" test, which asks "whether the element of the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim."  *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1015-16 (Fed. Cir. 1998).

The Supreme Court has noted that "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."  *Warner-Jenkinson*, 520 U.S. at 39 n.8.  Similarly, the Federal Circuit has held that "[a]lthough equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence."  *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir.1997).

Defendant argues that Plaintiff's theory of equivalence must fail as a matter of law because it would improperly "vitiate" the claim element in the '207 patent that requires a GPS chip to be located inside of the mobile lock.  The Supreme Court has held that "under the particular facts of a case . . . if a theory of equivalence would entirely vitiate a particular claim

ORDER - 4

element, partial or complete judgment should be rendered by the court." *Warner-Jenkinson*, 520 U.S. at 39 n.8.

The Federal Circuit has explained that "'[v]itiation' is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015) (citations omitted).  The Federal Circuit has noted that "saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).  As a result, to determine whether Plaintiff's theory of equivalence would "vitiate" a claim element in the '207 patent, the Court considers whether a reasonable jury could find equivalence under either the "insubstantial differences" test or the "function-way-result" test.

### 1. Insubstantial Differences Test

"Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).  Here, the Court finds that there are substantial differences between locating a GPS chip inside a mobile lock, as claimed in the '207 patent, and locating a GPS chip outside of the lock and connecting it to the interior of the lock by a wire.

As the Federal Circuit has noted, "courts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the antithesis of the claimed structure.'  In such a case, application of the doctrine of equivalents would 'vitiate' a claim element." *Deere & Co.*

ORDER - 5

*v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (internal citations omitted).  Here, "inside" is the opposite of "outside."  Therefore, finding equivalence would vitiate the claim element.  *See Brilliant Instruments*, 707 F.3d at 1347 (noting "[t]he vitiation concept has its clearest application where 'the accused device contain[s] the antithesis of the claimed structure.'"); *Moore U.S.A., Inc. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("[I]t would defy logic to conclude that a minority – the very antithesis of a majority – could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.").[2]

The Federal Circuit has also noted that demonstrating equivalence is "more difficult when the accused structure has an element that is the opposite of the claimed element, especially where the specification or prosecution history highlights the differences."  *Brilliant Instruments*, 707 F.3d at 1347.  Here, Defendant points out that in the Notice of Allowability for the '207 patent, the patent examiner's statement of reasons for allowance specifically highlighted that "the prior art does not disclose nor suggest a mobile lock with a particular structure as claimed containing a . . . Global Positioning System (GPS) location chip set."  Dkt. No. 39-10, Notice of Allowability, at 2 (emphasis added).  Plaintiff argues that the examiner's use of the word "containing" should not be read to refer to a lock with a GPS chip "inside" of it, but should instead be construed to refer to a lock "including" a GPS chip.  The Court finds this argument unpersuasive.  The examiner used the word "containing" to refer to "a mobile lock with a particular structure as claimed" by the '207 patent.  The "particular structure as claimed" by the '207 patent is one in which a GPS chip is located "inside" of the lock; specifically, Claim 1

---

[2] In Section B.2 below, the Court discusses additional reasons why the differences between locating a GPS chip inside rather than outside of a lock are substantial.

ORDER - 6

discloses "a location component <u>inside</u> the body component" of the lock.  Dkt. No. 9, Claim 1 (emphasis added).  In this context, the examiner's use of the word "containing" can only be read to refer to a lock with a GPS chip inside of it.[3]

As a result, the Court concludes that no reasonable jury could find that locating the GPS chip outside of the lock on Defendant's accused e-bike is an insubstantial difference from locating the GPS chip inside of a mobile lock, as claimed in the '207 patent.

### 2. Function-Way-Result Test

The Court next considers whether a reasonable jury could find equivalence under the "function-way-result" test.  As noted earlier, "[u]nder the function-way-result test, one considers whether the element of the accused device at issue performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim." *Dawn Equip. Co.*, 140 F.3d at 1016.  To support its argument that this test is satisfied here, Plaintiff relies on an affidavit from Donald Williams, the inventor of the '207 patent and Plaintiff's managing director.  Dkt. No. 44 at 9-10.

Mr. Williams asserts that the "function" of the location component in both the '207 patent and the accused e-bike is "to track the location of the bicycle, communicate with a user regarding the location and security of the bicycle and alert the user if the retractable cable is cut." *Id.* at 9.  In very similar terms, Mr. Williams states that the "result" of the location component in both the '207 patent and the accused e-bike is "to allow a user to track the location of the bicycle and alert the user if the bike is stolen, if, for example the cable is cut and/or the bike is relocated." *Id.* at 9-10.  Mr. Williams also asserts that "the same result is achieved because the

---

[3] Furthermore, as Defendant notes, the abstract for the '207 patent notes that the invention provides an attachable mobile lock with "an <u>integral</u> wireless locator system that can precisely locate the mobile device in real-time if stolen." Dkt. No. 9, abstract (emphasis added).

user does not know or care where the location communications module is located."  *Id.* at 10.

Plaintiff argues that Mr. Williams's analysis of the function-way-result test is sufficient to create a genuine issue of material fact on equivalence.  Dkt. No. 43 at 8 (citing *Brilliant Instruments*, 707 F.3d at 1348).

The Court disagrees.  Locating a GPS chip inside of a mobile lock, as claimed in the '207 patent, does not accomplish the same result as locating a GPS chip in an electronics module on the handlebars of a bike and connecting it by wire to a lock, as Defendant has done in the accused e-bike.  Mr. Williams himself notes that by placing the "location component" inside of a mobile lock, as claimed in the '207 patent, the lock may "be sold as a stand-alone mobile bike lock and then installed on any bike."[4]  Dkt. No. 44 at 3.  The same result of a stand-alone, trackable mobile bike lock is not achieved when the location component is outside of the lock and contained in an electronics module on the handlebars, as it is on the accused e-bike.

Furthermore, while Mr. Williams asserts that "the same result is achieved because the user does not know or care where the location communications module is located," he offers no basis to support this conclusory assertion.  To the contrary, Defendant as the owner of the accused e-bike would know and have reason to care where the location communications module is located on its rental vehicles.  Defendant has observed that locating the GPS in the dashboard of the accused e-bike, rather than inside the lock, results in allowing the e-bike's lock to be

---

[4] Mr. Williams asserts that placing the location component inside of the mobile lock, rather than as a device to be installed on a bicycle separately and then connected to the lock by a wire, was a mere "design choice" that he made for "design aesthetics, convenience, and to reduce the cost of manufacture."  *Id.*  However, as noted earlier, the Notice of Allowability specifically indicated that the examiner allowed the '207 patent to issue because "the prior art does not disclose nor suggest a mobile lock with a particular structure as claimed <u>containing</u> a . . . Global Positioning System (GPS) location chip set."  Dkt. No. 39-10, Notice of Allowability, at 2 (emphasis added).

ORDER - 8

replaced without the need to replace the e-bike's GPS chip, which inherently reduces the cost of the lock.  Dkt. No. 38 at 15.

As a result, the Court concludes that no reasonable jury could find equivalence under the function-way-result test.[5]

### 3.   Evidence of Copying

Through Mr. Williams' affidavit, Plaintiff has attempted to offer evidence that a person named Peter Luedtke (who Plaintiff claims is the engineer and designer of Defendant's accused e-bike) ordered a Mobiloc GPS retractable lock in February 2018 and allegedly "implemented the same retractable lock concept, only with the location component located in the handlebars rather than the lock."  Dkt. No. 43 at 11.  Plaintiff argues that "Mr. Luedtke's order of the Mobiloc GPS products, and likely copying of the functionality of the products with an insubstantial change, presents additional evidence of equivalence, and, at a minimum, a factual question precluding a grant of summary judgment to Defendant."  *Id.* at 12.

The Court has already found that the difference in location of the GPS chip is not insubstantial.  Furthermore, Mr. Williams' allegations of copying are objectionable in multiple respects.  For example, Mr. Williams uses Mr. Luedtke's "LinkedIn" profile to attempt to prove his employment history.  As Defendant points out, this LinkedIn profile is not self-authenticating and is hearsay.  Furthermore, even if the Court were to rely on the LinkedIn profile to establish Mr. Luedtke's employment history, the document indicates that Mr. Luedtke last worked at JUMP Bikes in 2015, three years before he allegedly ordered a lock from Plaintiff.  Although

---

[5] Because the Court grants summary judgment of non-infringement on the grounds that no reasonable jury could find equivalence, the Court declines to reach Defendant's additional arguments for summary judgment based on the disclosure-dedication doctrine and ensnarement.

ORDER - 9

Mr. Williams asserts that he believes that Mr. Luedtke continued to provide design and engineering services for JUMP bikes, he offers no basis to support this speculative contention.

In short, Mr. Williams' affidavit does not change the Court's analysis that no reasonable jury could find equivalence here, given the substantial difference between locating a GPS chip inside a mobile lock compared to locating a GPS chip outside of the lock.

**C.      Motions to Seal**

The parties have filed two motions to seal documents filed in connection with the summary judgment motion.  Dkt. Nos. 36 (seeking to seal Ex. 7 to Defendant's opening brief) and 45 (seeking to seal Ex. 1 to Plaintiff's opposition brief).  The Court grants both motions to seal, finding that the materials at issue contain confidential and sensitive business information in which the public has a minimal interest.

**D.      Remaining Counterclaim**

While the parties have suggested that were the Court to grant Defendant's motion for summary judgment the case potentially would be resolved, the Court notes that there still remains Defendant's counterclaim seeking a declaration of invalidity.  Dkt. No. 34.  Defendant shall inform the Court by August 30, 2021 whether it intends to pursue its counterclaim.

### III.      Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment of non-infringement (Dkt. No. 38) and GRANTS the parties' motions to seal (Dkt. Nos. 36 and 45).

Dated:  August 19, 2021

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 10